**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ABIRA MEDICAL LABORATORIES, LLC d/b/a GENESIS DIAGNOSTICS,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL ASSOCIATION OF LETTER CARRIERS HEALTH BENEFIT PLAN, *et al.*,<br><br>Defendants. | Civil Action No. 23-05142 (GC) (JTQ)<br><br>**MEMORANDUM OPINION** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court upon Defendant National Association of Letter Carriers Health Benefit Plan's Motion to Dismiss the Second Amended Complaint (SAC) pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(6). (ECF No. 29.) Plaintiff opposed, and Defendant replied. (ECF Nos. 32, 34.) The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Defendant's Motion is **GRANTED in part** and **DENIED in part**.

**I.    BACKGROUND**

Plaintiff Abira Medical Laboratories, LLC is a New Jersey limited liability company which "operated a licensed medical testing laboratory business." (ECF No. 26 ¶¶ 6, 8.)[1] Plaintiff

---

[1] This is one of more than forty cases that Plaintiff has filed in the United States District Court for the District of New Jersey or had removed here from the Superior Court of New Jersey since June 2023. Each of the lawsuits generally alleges that it was denied reimbursement for providing laboratory testing services.

"performed clinical laboratory, pharmacy, genetics, addiction rehabilitation, and COVID-19 testing services on specimens submitted by medical service providers, on behalf of Defendant's subscribers/members, for numerous patients located throughout the United States." (*Id.*) Defendant provides health insurance services and has a principal place of business in Ashburn, Virginia. (*Id.* ¶ 7.) Plaintiff alleges that the "requisitions of laboratory testing services that were submitted on behalf of Defendant's insureds contained an assignment of benefits, which created contractual obligations on [the] part of the Defendant to pay for the Laboratory Testing Services that were provided by Plaintiff to Defendant's insureds/members/subscribers."[2] (*Id.* ¶ 9.)

Plaintiff attaches to its SAC a spreadsheet which sets forth the "patients who were rendered Laboratory Testing Services, the dates of service, the amounts billed for those services, insurance polic[y] numbers, claim numbers (when provided) and their respective ascension numbers." (*Id.* ¶ 11.) Plaintiff contends that "[b]y virtue of the [Defendant's] patients' execution(s) of their

---

[2]     Plaintiff alleges the assignment executed by Defendant's insureds states as follows:

> I hereby assign all rights and benefits under my health plan and direct payments be made to Genesis Diagnostics for laboratory services furnished to me by Genesis Diagnostics. I irrevocably designate authorize and appoint Genesis Diagnostics or its assigned affiliates as my true and lawful attorney-in fact for the purpose of submitting my claims and pursuing any request, disclosure, appeal litigation or other remedies in accordance with the benefits and rights under my health plan and in accordance with any federal or state laws[.] If my health plan fails to abide by my authorization and makes payment directly to me, I agree to endorse the insurance check and forward it to Genesis Diagnostics immediately upon receipt. I hereby authorize Genesis Diagnostics or its assigned affiliates to contact me for billing or payment purposes by phone, text message, or email with the contact information that I have provided to Genesis Diagnostics, in compliance with federal and state laws.
>
> [(ECF No. 26 ¶ 10.)]

2

respective assignment of benefits on the requisition of services forms submitted to Plaintiff, and thereafter Plaintiff's tendering of Laboratory Testing Services to each of Defendant's subscribers/members, contractual obligations arose between the Plaintiff and Defendant with respect to each of the patients." (*Id.* ¶ 12.)

Plaintiff avers that although Defendant paid "a number of claims," it "did not pay and/or underpaid approximately . . . seventy-seven of the claims submitted by Plaintiff over the course of several years." (*Id.* ¶ 32.) The total amount of payments said to be due and owing is over $60,553.[3] (*Id.* ¶ 23.) According to Plaintiff, Defendant "engaged in a long campaign designed to deprive Plaintiff of thousands of dollars it is rightfully owed for services Plaintiff rendered to Defendant's subscribers and/or members" including by "repeatedly either fail[ing] to respond at all to properly submitted claims or fabricat[ing] some other pretextual basis to improperly refuse to make payment to Plaintiff." (*Id.* ¶ 13.)

Plaintiff filed its initial Complaint on July 25, 2023, and Defendant thereafter removed the action to this Court on August 18, 2023. After Defendant moved to dismiss the Complaint (ECF No. 4), Plaintiff filed its First Amended Complaint (FAC) (ECF No 8). On April 30, 2024, the Court granted Defendant's motion to dismiss the FAC and granted Plaintiff leave to file a SAC. (ECF No. 24.) In its SAC, Plaintiff asserts four causes of action against Defendant: Count One for breach of contract; Count Two for breach of the implied covenant of good faith and fair dealing; Count Three for fraudulent and negligent misrepresentation and promissory estoppel; and Count Four for quantum meruit/unjust enrichment. (ECF No. 26 ¶¶ 18-44.)

---

[3]   The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are diverse and since Plaintiff is seeking compensatory and punitive damages, "it does not appear to a *legal certainty*" that Plaintiff cannot recover the jurisdictional amount of $75,000. *See Frederico v. Home Depot*, 507 F.3d 188, 199 (3d Cir. 2007).

## II.    **LEGAL STANDARD**

On a motion to dismiss for failure to state a claim upon which relief can be granted, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. Of Sch. Directors of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)). When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 903 (3d Cir. 2021)). The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

For claims of fraud, plaintiffs "must satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9(b)." *Burns v. Stratos*, 2023 WL 4014474, at *2 n.3 (3d Cir. June 15, 2023) (citing *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)). This ordinarily requires "[a] plaintiff alleging fraud . . . [to] support its allegations 'with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue.'" *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)). "Rule 9(b)'s 'normally rigorous particularity

rule has been relaxed somewhat where the factual information is particularly within the defendant's knowledge or control.' But even if a relaxed application of Rule 9(b) were warranted . . . , [a plaintiff] would still need to allege facts demonstrating that his [or her] fraud claims are plausible." *Tripati v. Wexford Health Sources Inc.*, 2022 WL 17690156, at *2 n.3 (3d Cir. Dec. 15, 2022) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997)).

## III. DISCUSSION

### A. Count One—Breach of Contract

Plaintiff's breach of contract claim in the FAC was dismissed because it was "not enough for Plaintiff to generally allege that Defendant breached a contract by failing to pay for services pursuant to some currently unidentified agreement with some currently unidentified claimants." (ECF No. 24 at 4.[4]) In the SAC, however, Plaintiff identifies the insureds/claimants and the specific language in the assignments of benefits that were purportedly executed by those insureds/claimants. (ECF No. 26 at 4-5, 15-17.) Plaintiff also alleges that Defendant either failed to pay or underpaid approximately 77 claims submitted by Plaintiff over the course of several years. (*Id.* ¶ 32.)

Defendant contends that because Plaintiff has still not identified any specific portions of the underlying insurance contracts that Defendant allegedly violated (*i.e.*, any clauses outlining the right to receive reimbursement for laboratory testing that the claimants allegedly assigned to Defendant), Plaintiff's claim must be dismissed. (ECF No. 30 at 8-9.) Plaintiff, on the other hand, argues that it is "not provided a copy of the underlying insurance contract or plan documents during the process of administrating a claim" so "it would be unjust to require Plaintiff to cite to specific

---

[4] Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

5

provisions of the plan requiring payment." (ECF No. 32 at 12.) Instead, Plaintiff contends that "there [was] a reasonable expectation by Plaintiff that Defendant would have compensated Plaintiff[] in light of services rendered, the industry standard and regular cour[se] of conduct between an insurer and health care provider." (ECF No. 32 at 14.) Moreover, Plaintiff argues that Defendant's payment of *some* claims suggests that an implied contract exists. (*Id.*)

At this preliminary stage, construing the allegations in the light most favorable to Plaintiff, the Court finds that Plaintiff has plausibly alleged a breach of contract claim. Unlike in the FAC, Plaintiff has now identified the insureds/claimants at issue, the amount due for the services rendered to each insured/claimant, the date of those services, and the specific language of the assignment executed by the insureds/claimants. Under New Jersey law, "contract rights are generally assignable except where assignment is prohibited by operation of law or public policy." *Somerset Orthopedic Assocs., P.A. v. Horizon Blue Cross & Blue Shield of N.J.*, 785 A.2d 457, 462 (N.J. Super. Ct. App. Div. 2001). Plaintiff alleges that each of Defendant's insureds/claimants executed an assignment of "all rights and benefits under [their] health plan," they "direct[ed] payments be made to [Plaintiff] for laboratory services furnished" to them by Plaintiff, and Defendant failed to compensate Plaintiff accordingly. (ECF No. 26 ¶ 10.)

The factual allegations in the SAC are sufficient to put Defendant on notice of the grounds for Plaintiff's breach of contract claim. *See Motamed v. Chubb Corp.*, Civ. No. 15-7262, 2016 WL 1162853, at *4 (D.N.J. Mar. 24, 2016) ("While [the p]laintiffs do not cite specific contract provisions . . . [the defendant] was adequately put on notice of what [the p]laintiffs' claims are and the grounds upon which they rest."); *cf. Abira Med. Lab'ys v. Metro Risk Mgmt., LLC*, Civ. No. 23-20391, 2024 WL 3580759, at *1-4 (D.N.J. Jul. 29, 2024) (finding that the plaintiff's breach of contract claim that failed to identify any insureds/claimants did not allow the court to plausibly

6

infer that a contract existed). The Court finds that Plaintiff's allegations regarding the specific insureds/claimants at issue and the assignment executed by Defendant's insureds/claimants, together with the fact that Defendant paid for *some* claims but not others is sufficient at this stage. *Cf. Abira Med. Lab'ys, LLC v. BPA Bestlife Benefit Plan Administrators*, Civ. No. 24-00898, 2024 WL 4615731 (D.N.J. Oct. 30, 2024) (dismissing the plaintiff's breach of contract claim where the complaint did "not allege that [the d]efendant paid for any services" and where the plaintiff failed to identify any of the insureds/claimants); *Metro Risk Mgmt., LLC*, 2024 WL 3580759, at *4 (dismissing the plaintiff's breach of contract claim based on "unidentified claimants" because the plaintiff did not allege facts allowing for a plausible inference that a contract existed). Plaintiff's allegations have "raise[d] a reasonable expectation that discovery will reveal evidence regarding a contractual relationship between it and [Defendant] in the form of assignments of benefits from [Defendant's] insureds, [Defendant's] payment or nonpayment pursuant to those assignments, and any breach in [Defendant's] failure to pay the full amount it owed." *See Abira Med. Lab'ys, LLC v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, 2024 WL 2188911, at *2 (E.D. Pa. May 15, 2024) (internal quotation marks omitted).

Other district courts reviewing similar pleadings filed by Plaintiff have reached the same conclusion and allowed Plaintiff to further develop its breach of contract claim through discovery. *See Abria Med. Lab'ys, LLC v. Harvard Pilgrim Health Care, Inc.*, 2024 WL 4173781, at *6 (E.D. Pa. Sept. 12, 2024) (allowing the plaintiff's breach of contract claim to proceed where it "attached a chart as an exhibit . . . listing the [insureds/claimants] that it allegedly performed laboratory testing services for, the dates of service, the amounts billed for those services, and the respective accension numbers for the claims"); *Abira Med. Lab'ys, LLC v. CareSource*, 2024 WL 4817444, at *2 (S.D. Ohio Nov. 18, 2024) ("[The plaintiff] alleges that it received requisition documents

7

with assignments from approximately 192 laboratory testing services for [the defendant's] members. . . . At the current stage, [the plaintiff] has plausibly shown a contractual relationship existed with [the defendant].").

Accordingly, Defendant's Motion to Dismiss is denied as to Count One.

### B. Count Two—Breach of the Implied Covenant of Good Faith and Fair Dealing

The Court previously dismissed Plaintiff's claim for breach of the implied covenant of good faith and fair dealing because Plaintiff failed to plausibly allege the existence of a contract. (ECF No. 24 at 6.) The Court also noted that Plaintiff's breach of the implied covenant claim could be subject to dismissal as duplicative of its breach of contract claim. (*Id.*)

A plaintiff may assert a breach of the implied covenant of good faith and fair dealing claim where "a party has not violated a literal term of the agreement—which would give rise to a breach of contract claim—but has violated the spirit and purpose of the agreement." *Gap Props., LLC v. Cairo*, Civ. No. 19-20117, 2020 WL 7183509, at *4 (D.N.J. Sept. 17, 2020). A breach of the implied covenant of good faith and fair dealing claim, however, can be dismissed at the motion to dismiss stage if the allegations that form the basis of the breach of contract claim are the same as those that form the basis of the implied covenant claim or "where it is undisputed that a valid and unrescinded contract governs the conduct at issue." *Spellman v. Express Dynamics, LLC*, 150 F. Supp.3d 378, 390 (D.N.J. 2015); *see also Beaman v. Bank of Am., N.A.*, Civ. No. 21-2056, 2023 WL 4784254, at *16 (D.N.J. July 27, 2023) (dismissing the plaintiffs' claims for breach of the implied covenant of good faith and fair dealing as duplicative of their breach of contract claims where the implied covenant claims were "alleged as breaches of the parties' express contract").

Although Plaintiff's claim for breach of the implied covenant of good faith and fair dealing in the SAC rests on similar factual allegations as its breach of contract claim (*see* ECF No. 26

8

¶¶ 22, 26), the Court will allow the implied covenant claim to proceed because it is not clear at this preliminary stage that the now alleged contract governs the conduct at issue to warrant dismissal of Count Two. *Spellman*, 150 F. Supp. 3d at 390 ("[W]here a contract's existence or its specific terms are disputed, a court may allow breach of contract claims to proceed through discovery or trial alongside alternative causes of action."); *see also* Rule 8(d) (permitting parties to plead multiple claims alternatively or hypothetically). Here, Defendant disputes that a valid contract exists between the parties. (ECF No. 30 at 9 (arguing that Plaintiff "does not describe, cite, quote, or attach any provision in any contract making [Defendant] liable to its participants for the testing services they allegedly received from" Plaintiff).) Because the parties dispute the terms and nature of the alleged contractual obligations, the Court cannot determine at this stage whether the conduct alleged in Count Two "differs from a literal violation of . . . a pertinent express term" or is governed by the express terms of a valid contract to warrant dismissal. *Spellman*, 150 F. Supp. 3d at 390. Therefore, the Court will not dismiss Count Two at this preliminary stage.

### C. Count Three—Fraudulent and Negligent Misrepresentation and Promissory Estoppel

The Court dismissed Plaintiff's claims for fraudulent misrepresentation, negligent misrepresentation, and promissory estoppel in the FAC because Plaintiff did "not plead when such representations were made, who made the representations, how they were made (*e.g.*, in writing, by phone, or in person), or the substance of what was actually said that led [Plaintiff] to believe that Defendant would pay a specified amount for the testing services furnished." (ECF No. 24 at 6-7.) Similarly, in the SAC, Plaintiff alleges that it "submitted in excess of seventy-five claims to Defendant regarding Laboratory Testing Services rendered to Defendant's insured" and that "Defendant's representatives not only requested those services on behalf of Defendant's insureds/members/subscribers, but represented to Plaintiff that the patients/insureds were all

9

covered by policies of insurance issued by Defendant." (ECF No. 26 ¶ 31.) The Court finds that Plaintiff's allegations in the SAC lack the factual matter needed to plausibly support these allegations. Plaintiff has thus not cured the deficiencies identified by the Court in its April 30, 2024 Opinion. (ECF No. 24 at 6-8.)

The Court finds that further amendment would be futile. Thus, Count Three is dismissed with prejudice. *See Grooms v. Ally Fin.*, Civ. No. 23-2285, 2023 WL 8251315, at *2 (3d Cir. Nov. 29, 2023) ("[W]e agree with the [d]istrict [c]ourt's determination that amendment would be futile and therefore the [d]istrict [c]ourt properly dismissed the complaint with prejudice.").

### D.     Count Four—Quantum Meruit/Unjust Enrichment

Plaintiff's claim for quantum meruit/unjust enrichment rests on its allegation that Defendant "has enriched itself at Plaintiff's expense by failing and refusing to compensate Plaintiff for providing Laboratory Testing Services to Defendant's subscribers and/or members, and instead Defendant is using those funds for Defendant's own purposes." (ECF No. 26 ¶ 40.) Both quantum meruit and unjust enrichment "require[] a determination that [the] defendant has benefitted from [the] plaintiff's performance." *MHA, LLC v. Amerigroup Corp.*, 539 F. Supp. 3d 349, 361 (D.N.J. 2021) (quoting *Woodlands Cmty. Ass'n, Inc. v. Mitchell*, 162 A.3d 306, 310 (N.J. Super. Ct. App. Div. 2017)).

In its previous Opinion, the Court dismissed Plaintiff's claim for quantum meruit/unjust enrichment because Plaintiff had not plausibly "establish[ed] that a plan exists under which Defendant 'received a benefit.'" (ECF No. 24 at 9.) However, Plaintiff has now identified the insureds/claimants at issue, the amount due for the services rendered to each insured/claimant, the date of those services, and the specific language of the assignment executed by the insureds/claimants. (ECF No. 26 at 4-5, 15-17.) Plaintiff has sufficiently pled allegations allowing the Court to infer that Defendant retained a benefit under a plan without payment. Moreover,

Plaintiff has sufficiently alleged that Defendant's retention of the benefit was unjust. (ECF No. 26 ¶ 13 (alleging that Defendant "engaged in a long campaign designed to deprive Plaintiff of thousands of dollars it is rightfully owed for services" by "repeatedly either fail[ing] to respond at all to properly submitted claims or fabricat[ing] some other pretextual basis to improperly refuse to make payment to Plaintiff").) *See Harvard Pilgrim*, 2024 WL 4173781, at *7 (finding that the plaintiff stated a claim for quantum meruit/unjust enrichment where it alleged that the defendant "engaged in a long campaign designed to deprive [the p]laintiff of thousands of dollars it is rightfully owed for services' by either failing to respond to properly submitted claims or 'fabricat[ing] some other pretextual basis to improperly refuse to make payment to [the p]laintiff'"); *Kaiser*, 2024 WL 2188911, at *8 (denying a motion to dismiss the plaintiff's quantum meruit/unjust enrichment claim where the plaintiff alleged that it "performed lab testing for [the defendant's] members, it conferred a benefit on [the defendant], and that [the defendant] unjustly retained that benefit by failing to compensate" the plaintiff); *CareSource*, 2024 WL 4817444, at *6 (denying a motion to dismiss the plaintiff's unjust enrichment/quantum meruit claim where the plaintiff alleged "that it conferred a benefit upon [the defendant] when it performed laboratory testing services, [the defendant] was aware of the benefits, and it was unjust for [the defendant] to 'fail[ ] and refus[e] to compensate [the p]laintiff' for its services").

Finally, as the Court noted in its previous Opinion, district courts in this Circuit have consistently dismissed unjust enrichment claims when a healthcare provider sues an insurer for the unreimbursed costs of a procedure performed on behalf of an insured because benefits for medical services inure "only to the patients treated," not the insurers. (ECF No. 24 at 8 n.5 (quoting *Plastic Surgery Ctr., LLC v. Oxford Health Ins., Inc.*, Civ. No. 18-2608, 2019 WL 4750010, at *6 (D.N.J. Sept. 30, 2019).) But at least one court in this Circuit has interpreted the United States Court of

Appeals for the Third Circuit's decision in *Plastic Surgery Ctr., P.A. v. Aetna Life Insurance. Co.*, 967 F.3d 218, 241 n.26 (3d Cir. 2020) as "opening the door for unjust enrichment claims against insurers." (ECF No. 24 at 8-9 (citing *MHA, LLC*, 539 F. Supp. 3d at 360).) Defendant refers to this case as an "outlier," but does not distinguish *Plastic Surgery Center* from the instant matter except by arguing that Plaintiff has not alleged an underlying contract. (ECF No. 30 at 12-13.) At this preliminary stage, the Court is persuaded by the reasoning in *Plastic Surgery Center* that "where a healthcare provider claims unjust enrichment against an insurer, the benefit conferred, if any, is not the provision of the healthcare services *per se*, but rather the discharge of the obligation the insurer owes to its insured." 967 F.3d at 240. Therefore, the Court denies Defendant's Motion to Dismiss as to Count Four, but Defendant may renew its argument at a later stage based on a more fulsome record.

## IV.   CONCLUSION

For the foregoing reasons, and other good cause shown, Defendant's Motion to Dismiss (ECF No. 29) is **GRANTED in part** and **DENIED in part**. An appropriate Order follows.

Dated: January 23, 2025

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE